Argued September 22; affirmed December 8, 1931

WHY *v.* CITY OF MARSHFIELD ET AL.

(5 P. (2d) 696)

*John D. Goss,* of Marshfield (Goss, Murphy & Skipworth, of Marshfield, on the brief), for appellant.

*J. W. McInturff,* of Marshfield, for respondent.

CAMPBELL, J. This suit was brought to enjoin the defendants from condemning and destroying a certain building in the city of Marshfield. It appears that

the building and the lot upon which it is located are owned by one Gow Why who for considerable time has been living in China and has been absent from this state. The plaintiff is the wife of said Gow Why and occupies approximately one-half of the ground floor of said building in the operation of a grocery store, and occupies a portion of the second floor as living quarters for herself and family. There is also in the building on the ground floor a restaurant and a barber shop. That up until the latter part of July, 1929, there was also a butcher shop in said building; but at that time a fire destroyed to a large extent the part of the building occupied by said butcher shop. The city council of Marshfield refused plaintiff a permit to repair the part of the building burned. The plaintiff receives, for her own use and that of her family, the rents and proceeds of said building. She complains that the city council of Marshfield passed a resolution on the sixth day of January, 1930, condemning said building as dangerous and as a public nuisance, on the ground that it was a fire hazard and in such an insanitary condition as to be a menace to the public health, and the council ordered that said building be vacated within five days from the date of the service of said order upon plaintiff. That said order was served on plaintiff January 8, 1930.

She alleges that the passage of said resolution and all steps taken thereunder by the defendants "were and are arbitrary and without warrant of law."

To her complaint the defendants filed an answer in which they deny being arbitrary or unreasonable in passing or in enforcing the resolution complained of.

For a further and separate answer and defense, they set out the whole proceedings taken by the city council in regard to the said building as well as the

portions of the city charter under which they acted, together with the ordinance authorizing the proceedings taken. The answer details, step by step, how and why it was done. Attached to the answer was a copy of that part of the city charter authorizing abatement of nuisances, marked exhibit "A"; a copy of the ordinance passed pursuant to the power granted by the charter, marked exhibit "B"; a copy of the report of the fire chief regarding said building, marked exhibit "C"; a copy of a further report made by the chief of the fire department at the request of the city council, marked exhibit "D"; a copy of the report of the health officer, marked exhibit "E"; a copy of the resolution adopted by the city council fixing the time and place for a public hearing to determine whether the premises in question "constitute a reasonable fire hazard, a health hazard, and a public nuisance," marked exhibit "F." That, pursuant to said resolution, the recorder of the city mailed to the record owner of the premises a notice notifying him of the time and place of the hearing, and also posted a copy of such notice on the building. A copy of the notice is attached to the answer, marked exhibit "G." That the meeting for the purpose of determining whether said building was nuisance was postponed from time to time at request of plaintiff; due notice of which was given to all persons interested, and that at said meeting witnesses under oath were heard on behalf of the owner of the property as well as on behalf of the public. The city council made a personal inspection of the structure, and the cause was then submitted to the city council, who, after due deliberation, passed a resolution declaring:

"First: That said building be, and the same is hereby declared to be, a dangerous building as a mat-

ter of fact, and also the same is hereby declared to be a dangerous building as defined by Ordinance No. 1221 of the city of Marshfield, adopted on March 7, A. D. 1927.

Second: That said building be and the same is hereby declared to be a public nuisance.

Third: That owing to the dilapidated, rotted and dangerous condition of the building and the insanitary condition thereof, it is practically impossible to renovate, reconstruct or to make said building safe and sanitary.

Fourth: That it is the judgment of the council that said building should be removed and abated.

Fifth: That the council should order the building forthwith vacated and should prohibit the use of any portion thereof for commercial or residence purposes, and order the owner of said building and all persons interested therein to forthwith vacate the same and to proceed without delay to tear down and remove said building and the whole thereof.

Sixth: That the recorder be and is authorized and directed to give five days notice of this resolution to the owner of said building, his agent or other person controlling the same.''

That thereupon at said meeting the city council adopted an order to carry out the provisions of said resolution.

The plaintiff in her reply admits that the said steps had all been taken.

On these pleadings the case proceeded to trial. Testimony was offered on the part of defendants tending to show that the condition of the building was a common nuisance, both as a fire hazard and to the health of the community. Witnesses testified on the part of plaintiff tending to refute the testimony of defendants' witnesses. After a full and complete hearing and a personal view of the premises, the trial court found

that the building was a nuisance in fact, and should be abated; and decreed that the plaintiff should have one year in which to carry out the abatement, and authorized the city, in the event the defendant did not do so, to abate the nuisance in the manner provided by its charter and ordinances, doing as little injury to plaintiff's property as possible in said abatement. This decree was entered October 3, 1930.

Plaintiff appeals.

Appellant complains of the action of the trial court, in refusing to strike out certain parts of the answer. While the answer may be subject to criticism as not being strictly "a plain, concise statement of the facts constituting the cause of action, without unnecessary repetition," (Oregon Code 1930, Sec. 1-604, sub-sec. 2), yet it certainly informed the plaintiff fully of the defense to her cause of suit.

The city charter of the city of Marshfield provides as follows:

"Section 28. The council has power and authority within the city of Marshfield:

\* \* \* \* \*

"6. To make regulations to prevent the introduction of contagious or dangerous diseases in the city. \* \* \* To secure the protection of persons and property therein, and to provide for the health, cleanliness, ornament, peace and good order of the city.

\* \* \* \* \*

"10. To prevent and remove nuisances, and to declare by general rules what shall constitute the same; \* \* \* but in such case the same must be reported to the council, and the necessity of the abatement thereof declared.

\* \* \* \* \*

"11. To prohibit the repair or erection of wooden buildings within the fire limits, and to restrain and limit the height of buildings within such limits; * * *.

* * * * *

"14. To prevent the taking and spreading of fires in the city, by establishing fire limts * * *.

* * * * *

"28. To prevent the erection of buildings within the city limits which shall be dangerous to passersby or adjacent property; and in case any building or public street shall be or become dangerous to passersby or adjacent property, the council shall have power to cause the same to be removed or made safe * * * and to determine by resolution what buildings or structures are dangerous * * *.

* * * * *

"47. And whenever any proceeding, matter or thing is by this act committed or left to the discretion or judgment of the council, such discretion or judgment of the council when exercised or declared by the council is final, and can not be reviewed or called in question elsewhere."

Pursuant to the powers granted in the above sections of their charter, the city council of Marshfield passed Ordinance No. 1221 which was approved by the mayor March 7, 1927. The parts of the ordinance pertinent to this case read as follows:

"Section 1. For the purpose of this ordinance the term dangerous building shall mean and include any building or other structure which for the want of proper repairs or by reason of age and dilapidated condition or by reason of poorly installed electric wiring or equipment, defective chimney, * * * or for any other cause or reason is especially liable to fire, and which building or structure is so situated or occupied as to endanger any other building or property or human life. * * * Said term shall also mean and include any building or structure which shall be kept or maintained or shall be in a filthy or insanitary con-

dition, especially liable to cause the spread of contagious or infectious disease or diseases. Said term shall also mean and include any building or structure in such weak or weakened condition, or dilapidated or deteriorated condition as to endanger any person or property by reason of probability of partial or entire collapse thereof.

\*　　　\*　　　\*　　　\*　　　\*

"Section 4. Whenever the mayor, marshal, city attorney, street commissioner, fire chief, or any councilman, shall find or be of the opinion that there is a dangerous building in the city of Marshfield, it shall be the duty of such person to report the same to the common council. Thereupon the common council shall, within a reasonable time, fix a time and place for a public hearing thereon. Notice shall be mailed to the owner of record of the premises whereon said building is located, by the city recorder, notifying said owner in general terms that a hearing will be held concerning said property, and the time and place thereof. At said time and place, or at such other time or times, or place or places, as the council may adjourn to, said hearing shall be held, and the council shall determine by resolution whether or not said building is dangerous. The council may, as a part of said hearing, inspect said building, and the facts observed by said council at such inspection may be considered by it in determining whether or not said building is dangerous. At said hearing the owner or other person interested in said property or building shall have the right to be heard, if such owner or person requests the same. Ten days notice of any such hearing shall be given by publication in some newspaper published in the city of Marshfield, or by posting notice thereof in three public places in said city, and if the last mentioned notice be published or given as herein required, no irregularity or failure to mail notices shall invalidate the proceedings. At such hearing the council shall have the power to order any building declared to be dangerous, removed and abated, if in its judgment such removal or abatement is necessary in order to remove said dangerous

condition, or the council shall have the power to order said building made safe and to prescribe what acts or things must be done to render the same safe. Five days notice of said findings and of any orders made by the council shall be given to the owner of said building, his agent or other person controlling the same, and if said order be not obeyed and said building rendered safe within the time in said order specified, being not less than five days, then the council shall have the power and duty to order said building removed or made safe at the expense of the property on which the same may be situated. In that event the council must specify with convenient certainty the work to be done and shall file a statement thereof with the recorder, and shall advertise for bids for the doing of said work in the manner provided for advertising for bids for street improvement work, and thereafter said bids shall be received, opened, and contract let, the council shall ascertain and determine the probable cost of said work, and assess the same against the property upon which said building is situated, said assessment shall be declared by an ordinance, and it shall be entered in the docket of city liens, and shall thereupon be and become a lien against said property, and the creation of said lien and the collection and enforcement of said cost shall all be done and performed in substantially the same manner as in the case of the cost of street improvements, but irregularities or informalities in the procedure shall be disregarded.

"Section 5. Every building or part thereof which shall be hereafter found by the common council to be a dangerous building; is hereby declared to be a public nuisance, and the same may be abated either summarily or the procedure herein above may be followed or a suit for abatement thereof may be brought by the city of Marshfield in the circuit court of Coos county, Oregon."

The learned trial court made full and complete findings on all questions of fact in controversy, in which he found in effect:

That the building constitutes an unreasonable fire hazard; that it is in such a dilapidated condition that it is liable to collapse and injure human life and other property; that its insanitary condition is a menace to the health of the community; that action taken by the common council of the city was not arbitrary in its findings; that the structures in question do constitute a public nuisance and the city should be permitted to abate the same; but that the city acted unreasonable in allowing only five days to abate.

It is sufficient to say that there was abundant evidence to support these findings.

There is no question of law involved. It is not contended that the charter granted by the state of Oregon to the city of Marshfield does not empower the city to do what it has done in the premises. It is not claimed that the city did not strictly comply with the provisions of the city charter in adopting Ordinance No. 1221. Neither is it contended that the city failed to comply strictly with the provisions of this ordinance in declaring the structure under consideration a nuisance. In fact, the only contention made by appellant is that the city council and the trial court came to wrong conclusions in their findings of fact.

 We agree with counsel for appellant that a building must be a nuisance in fact before it may be condemned or abated. The city council may not arbitrarily and unreasonably declare any structure a nuisance: 20 R. C. L. 389. In the instant case, before action was taken, the owner of the building was notified, a full hearing was had, the plaintiff was present with her counsel, witnesses were heard under oath. The plaintiff, through her counsel, was given ample opportunity, of which she availed herself, to cross-examine the wit-

nesses. Plaintiff was permitted to and did call witnesses in her own behalf. These witnesses were heard and their testimony considered. The city council made a personal inspection of the structures. The action of the city council could not be considered arbitrary or unreasonable in finding that the structure was a nuisance when it had sufficient evidence to sustain the findings.

■ The circuit court decreed.

"That after a period of one year, and after the determination of an appeal in the event one is taken in these proceedings, the city of Marshfield be and it is hereby permitted to abate said nuisance under the provisions of its charter and its ordinances and to charge the cost and expense thereof to the property as provided in said charter and ordinances."

In order that there may be no misunderstanding, it will be well to call attention to the provision above referred to. Section 4, of Ordinance No. 1221, provides:

"At such hearing the council shall have the power to order any building declared to be dangerous, removed and abated, if in its judgment such removal or abatement is necessary in order to remove said dangerous condition, or the council shall have the power to order said building made safe and to prescribe what acts or things must be done to render the same safe."

The counsel may adopt either alternative. The said section of Ordinance No. 1221 further provides the method and manner of procedure if after the due notice the owner of the building fails to comply with the order of the city council. The city council having decided to abate the nuisance by removal of the building and having proceeded no further than ordering the

structures to be removed by the owner, we must assume that in any further proceeding the city council will make all necessary orders and will in all respects comply with its charter and ordinances.

Finding no error, the decree of the trial court is affirmed. During the winter season the fire hazard is much diminished, therefore the time in which the decree of the trial court permitted the plaintiff to abate is hereby extended to July 15, 1932. Neither party shall recover costs or disbursements.

BELT, J., did not participate in this opinion.